UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYELLEN NOVAK,<br><br>                          Plaintiff,<br><br>     -against-<br><br>THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT OFFICER ASHLEY MAHARAJ, in her individual capacity; NEW YORK CITY POLICE DEPARTMENT OFFICER QASIM MUSHTAQ, in his individual capacity; NEW YORK CITY POLICE DEPARTMENT OFFICERS "JOHN DOE" #1-5, in their individual capacities; NEW YORK CITY POLICE DEPARTMENT DEPUTY INSPECTOR NEIL ZUBER, in his individual capacity,<br><br>                          Defendants. | **COMPLAINT AND JURY TRIAL DEMAND**<br><br>Case No. _____ |

Plaintiff Maryellen Novak, by and through her attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the Benjamin N. Cardozo Civil Rights Clinic, alleges as follows for her complaint:

**PRELIMINARY STATEMENT**

1. On May 7, 2024, New York City Police Department ("NYPD") officers arrested Maryellen Novak while she was leaving a peaceful protest where she had just served as a volunteer safety marshal. As she was crossing Park Avenue (with a walk signal) with several demonstrators, an irate counter-protester drove his car through the crosswalk and into the crowd, striking Ms. Novak. Moments later, still reeling from the shock of being nearly run over by a car, while receiving medical attention in an ambulance, NYPD officers arrested Ms. Novak.

1

2. The protest had been orderly and legal, and it ended without incident. But after the counter-protester drove into the group, tensions escalated. Defendant Deputy Inspector Neil W. Zuber called demonstrators who were filming him "fucking morons" and baselessly threatened everyone with arrest.

3. Ms. Novak, injured and afraid herself, continued to work as a safety marshal, attempting to deescalate tensions, ensure the demonstrators' safety, and gather information. She asked Defendant Zuber where they were taking the other safety marshal they had arrested. When Defendant Zuber repeatedly told her it was none of her business, she asked for his badge number. Then, Ms. Novak was arrested too.

4. Later, officers told Ms. Novak, while she was handcuffed to a hospital bed, that the charges against her would be dropped. Nevertheless, she remained handcuffed and confined for another several hours. She was ultimately released on or around midnight. Ms. Novak was never issued a criminal court desk appearance ticket.

5. In total, Ms. Novak was in police custody for more than thirteen hours with no basis or explanation for her arrest, leaving her physically and mentally traumatized. Instead of protecting her, Defendants terrorized Ms. Novak when she needed them most.

6. Ms. Novak now brings this action for false arrest and retaliation arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution and state law.

**PARTIES**

7. Plaintiff Maryellen Novak currently resides, and at all relevant times has resided, in Manhattan, New York.

8. Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. Defendant City of New York is authorized by law to maintain

a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. Defendant NYPD Deputy Inspector Neil W. Zuber (Tax ID #931483) is and was at all times relevant herein an officer, employee, and agent of the City of New York. On the date of the incident, May 7, 2024, he was assigned to the 19th Precinct in New York County. Defendant Zuber is sued herein in his individual capacity.

10. Defendant NYPD Officer Qasim Mushtaq (Tax ID #974379) is and was at all times relevant herein an officer, employee, and agent of the City of New York. On the date of the incident, May 7, 2024, he was assigned to the 19th Precinct in New York County. Defendant Mushtaq is sued herein in his individual capacity.

11. NYPD Officer Ashley Maharaj (Tax ID #975004) is and was at all times relevant herein an officer, employee, and agent of the City of New York. On the date of the incident, May 7, 2024, she was assigned to the 19th Precinct in New York County. Defendant Maharaj is sued herein in her individual capacity.

12. Defendant NYPD Officers John Does #1-5 (collectively the "Doe Defendants'), names and shield numbers unknown, were each at all relevant times officers of the NYPD, and each was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. The Doe Defendants are sued in their individual capacities.

13. At all times relevant herein, Defendants Mushtaq, Maharaj, Zuber, and the Doe Defendants (collectively, the "Individual Defendants") were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the

NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

## JURISDICTION AND VENUE

14. This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York State common law.

15. This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff's claims arise under the laws of the United States, namely 42 U.S.C. § 1983, and seek redress for the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the Southern District of New York.

## PROCEDURAL REQUIREMENTS

18. Within ninety days after her arrest, Ms. Novak filed a notice of claim pursuant to General Municipal Law § 50-h. Thirty days have elapsed since service of such notice. Defendants have neglected or refused to make an adjustment or payment thereof. Ms. Novak attended and testified at the hearing required on November 12, 2024. This action was commenced within one year and ninety days of the events upon which the claims are based.

## JURY DEMAND

19. Plaintiff demands trial by jury.

## FACTS

20. Maryellen Novak has dedicated her life's work to helping and protecting others. She is a volunteer grassroots organizer, activist, and safety consultant who, for more than five years, has provided guidance to organizations across the country as a conflict resolution consultant. Ms. Novak earned her Master's in Negotiation and Conflict Resolution at Columbia University in 2016. She has taught hundreds of people the principles of active listening and management of biases to maintain safety. One of the ways that Ms. Novak has been able to put some of these skills to work is in her role as a safety marshal.

21. As a safety marshal, Ms. Novak ensures that others are able to exercise their free speech rights safely, without endangering themselves or others. Ms. Novak performs this role, in part, by communicating necessary orders from law enforcement to protesters to help maintain order and ensure compliance with law.

22. Ms. Novak has on multiple occasions led training courses on active listening and de-escalation to teach grassroots organizers, the general public, and other volunteer safety marshals to effectively handle volatile interactions between protesters and counter-protesters.

23. Shortly before May 7th, students from Columbia University Apartheid Divest ("CUAD") asked Ms. Novak to serve as a safety marshal in an action they were organizing for May 7, 2024.

24. CUAD's action was planned in response to the horrific violence in Palestine following the October 7, 2023 Hamas terrorist attack in Israel. The student protesters were demanding Columbia's divestment from Israel.

### *The May 7, 2024 Protest Proceeds Lawfully*

25. On May 7, 2024, Ms. Novak, her team of volunteer safety marshals, and the approximately 15-20 CUAD protesters met in Central Park at around 8:00am to go through a brief de-escalation training.

26. After the training, at around 8:30am, Ms. Novak and the rest of the group made their way to the protest location at 72nd street and Park Avenue on the sidewalk in front of Barnard College trustee Francine LeFrak's home.

27. The protest commenced at or around 9:00am.

28. Police arrived at or around 9:15am.

29. Ms. Novak, serving as police liaison, lead de-escalator, and lead safety marshal, introduced herself to two police officers on the scene, Defendant Maharaj and Defendant Mushtaq. Ms. Novak explained to them that her role as a volunteer safety marshal was to help maintain order and communicate with police to help the demonstrators comply with potential directives. Ms. Novak also informed the police of the nature of the action when introducing herself.

30. At the start of the protest, Defendant Maharaj and Defendant Mushtaq informed Ms. Novak that the protest was orderly and perfectly legal.

31. Throughout the protest, residents were able to walk in and out of the building outside which the demonstration was taking place. At no point did the protesters block or disturb the entrance or exit from the sidewalk.

32. Throughout the day, Ms. Novak wore an identifiable yellow, crossing guard-style vest to remain visible both to demonstrators and police. The other safety marshal who was later arrested wore a similar neon-colored vest.

6

33. While the protesters remained peaceful, counter-protesters were combative.

34. One counter-protester drove up to the group, asking for flyers. When a protester passed him one through the driver's side window, he grabbed the protestor's arm, pulling it into the car.

35. Despite the tense environment, the protesters remained peaceful throughout the entire protest and its aftermath.

36. All the while, Ms. Novak continued to ensure everyone's safety, including the volunteer safety team, protesters, counter-protesters, and pedestrians. She walked along the perimeter of the group, standing between the protesters and aggressive counter-protesters so no one got hurt.

37. At no point did the group of CUAD affiliated protesters or safety marshals become tumultuous or violent.

38. Upon information and belief, the Individual Defendants observed that the protest proceeded peacefully and lawfully.

39. At or around 9:45am, the protest ended, and the protesters and safety marshals picked up flyers that had been thrown to the ground, ensuring the sidewalk was clear of litter before they left.

40. Ms. Novak and her volunteer safety team then escorted the protesters away from the site of the protest. To protect them from violent counter-protesters, Ms. Novak asked Defendant Mushtaq to follow the group as they left the protest site.

41. The group started walking west bound on East 72nd Street towards Park Avenue.

*A Counter-Protester Drives His Vehicle into the Crowd, Striking Ms. Novak*

42. When they had a walk signal, the group began walking along the crosswalk on Park Avenue.

43. The group had made it to the first median strip and were proceeding to cross the next segment of the avenue when an SUV turned into and began heading toward them.

44. Despite the group's presence in the crosswalk, the driver of the SUV continued driving into them.

45. At the time that the SUV drove into the group, the protesters had a walk signal.

46. As the SUV drove into the crowd, Ms. Novak put her hands out in front of her in a gesture to stop the car from running over the protesters.

47. The SUV continued to drive forward, ultimately striking Ms. Novak's outstretched arms before hitting her body. For several moments after being struck by the SUV, Ms. Novak was carried on the hood of the vehicle before being thrown off in front of it, when the driver ultimately and abruptly stopped.

48. Ms. Novak did not cause any damage to the SUV.

49. Upon information and belief, the Individual Defendants saw Ms. Novak being struck by the SUV and had no reasonable basis to believe she had caused any damage to the car.

50. Upon information and belief, the driver of the SUV was the same counter-protester who had pulled a protester's arm through the driver's side window of his car earlier that morning.

*Ms. Novak Asks NYPD Officers Questions*

51. Another volunteer safety marshal wearing a neon vest attempted to stop the SUV from driving over Ms. Novak and the protesters.

52. That volunteer safety marshal was arrested seconds later.

53. Defendant Zuber stood next to the other volunteer safety marshal as Defendant Maharaj placed handcuffs on him.

54. As protesters filmed the arrest, Defendant Zuber called them "fucking morons" and threatened them with arrest, saying he had enough handcuffs for everyone.

55. Ms. Novak asked Defendant Zuber which precinct they were taking the other safety marshal to. Defendant Zuber said he had no idea and that it was none of her business.

56. Ms. Novak insisted it was her business, and Defendant Zuber repeated, "I don't know and you're not finding out!"

57. After that, Ms. Novak asked Defendant Zuber for his badge number and asked the protesters to record it.

58. The Individual Defendants heard Ms. Novak asking where they were taking the other safety marshal and asking the protesters to record Defendant Zuber's badge number.

59. As the other safety marshal was being escorted into a police car with handcuffs on, Ms. Novak continued her de-escalation work, telling him, "Don't worry, we got you."

### Ms. Novak is Unlawfully Arrested While Getting Medical Attention

60. Having observed Ms. Novak get hit by the SUV, Defendant Mushtaq approached her to ask if she needed medical attention. Ms. Novak said she did.

61. Minutes later, Ms. Novak explained to Defendant Mushtaq that she and the protesters had the light when they were crossing the street. Defendant Mushtaq told Ms. Novak not to worry about that, as he had seen "the entire thing."

62. When EMTs arrived minutes later, Defendant Maharaj explained to them that Ms. Novak was "trying to stop that car from hitting [the protesters]" when she was hit.

63. Defendant Mushtaq explained to an EMT that Ms. Novak had just gotten "ran over by a car" while she "was just walking."

64. EMTs led Ms. Novak into an ambulance. Inside, Ms. Novak was approached by Defendant Maharaj, Defendant Mushtaq, and Defendant Doe #1. Defendant Maharaj asked Ms. Novak to stand up.

65. An EMT in the ambulance asked Defendant Maharaj and Defendant Mushtaq if they could take Ms. Novak's vitals before she was handcuffed, but the officers refused.

66. Defendant Maharaj handcuffed Ms. Novak.

67. Upon information and belief, Defendant Zuber was the supervisor on the scene.

68. None of the Individual Defendants had probable cause to arrest Ms. Novak, nor did they intervene to stop Ms. Novak's unconstitutional arrest.

69. While she was being handcuffed, Ms. Novak asked why she was being arrested. Defendant Mushtaq replied that they would tell her later, seemingly unable to articulate the grounds for her arrest.

70. Ms. Novak asked that her wrists be handcuffed in front rather than behind her body, but Defendant Doe #1 said no. EMTs struggled to check Ms. Novak's vitals.

71. Ms. Novak was traumatized and emotionally harmed by being falsely arrested and treated by the police as a criminal when she was in fact a victim.

72. Upon information and belief, Ms. Novak and the other volunteer safety marshal wearing a bright vest were the only ones arrested, apart from the counter-protester who nearly ran her over.

### *Ms. Novak Remains in Custody for Hours After Being Told the Charges Against Her Were Going to be Dropped*

73. Ms. Novak was transported to New York-Presbyterian/ Weill Cornell Medical Center, where she was seen for pain to her left hand, right hip, and right shin.

74. Ms. Novak remained handcuffed to the hospital bed for hours while she was examined by medical providers and awaited consultation. The handcuffs felt painful and tight.

75. At the hospital, Defendant Maharaj repeated that she had seen the car drive into Ms. Novak and did not know why Ms. Novak was arrested.

76. On or before 12:15pm, while in the hospital, Defendant Maharaj informed Ms. Novak, and another safety marshal who was visiting Ms. Novak in the hospital, that that the case against Ms. Novak would be dropped.

77. Even though Defendant Maharaj knew the baseless charges against Ms. Novak were going to be dropped, Ms. Novak remained in custody for another 11 hours.

78. After Ms. Novak was treated for her injuries, she was released from the hospital, still in handcuffs.

79. At around 2:00pm, Ms. Novak was transported to the 20th Precinct on the West Side of Manhattan in a police car.

80. Ms. Novak remained handcuffed and seated in the back seat of a squad car with Defendant Maharaj and two other NYPD officers.

81. At around 10:15pm, Ms. Novak was transferred to the 19th Precinct on the East Side of Manhattan.

82. No one told Ms. Novak why she was being transferred.

83. After arriving at the 19th Precinct, officers walked Ms. Novak past the holding cell where the counter-protester who had struck her with her car that morning was being held.

11

***The District Attorney's Office Declines to Prosecute and Ms. Novak is Released Near Midnight***

84. The same day, May 7, 2024, Officer Mushtaq told Ms. Novak the District Attorney's Office declined to prosecute her, and the charges were dropped.

85. Upon information and belief, the Manhattan District Attorneys' Office charged the man who drove into Ms. Novak with second-degree assault.[1]

86. When Ms. Novak was finally released from the 19th Precinct, it was almost midnight, and she was alone. Since the police had left Ms. Novak's property, including her phone and wallet, at the 20th Precinct, she had no way to navigate home or contact anyone for help. No one knew where she was.

87. Ms. Novak found herself stranded, terrified, and helpless in the middle of the night.

88. Ms. Novak had to find her way back to the West Side 20th Precinct to recover her belongings. None of the officers transported her back.

89. Because of her physical injuries, Ms. Novak was sore and limping for the duration of her commute to the West Side 20th Precinct for over an hour.

90. Ms. Novak only arrived at the West Side 20th Precinct at around 1:45am on May 8, 2024. She recovered her belongings at approximately 2:30am, on May 8, 2024.

91. Ms. Novak arrived at her home at approximately 4:30am on May 8, 2024.

92. No summons or ticket was ever issued to Ms. Novak. Ms. Novak was not informed of the charges or the reason for her arrest.

---

[1] Harubie Meko, *Man Is Charged After Hitting Pro-Palestinian Protester With His Car,* New York Times, May 8, 2024 https://www.nytimes.com/2024/05/08/nyregion/columbia-driver-arrested-pro-palestinian-protesters.html.

***Ms. Novak Sustains Lasting Physical and Emotional Damages***

93. As a result of the retaliatory and false arrest after a life-threatening attack, Ms. Novak remains in a state of emotional distress, fear, and trauma.

94. Ms. Novak has also suffered loss of liberty, loss and deprivation of her civil rights, humiliation, pain and suffering, mental anguish, and a damaged reputation.

95. Ms. Novak is now afraid to be in the presence of the police.

96. Because of Ms. Novak's wrongful arrest, Ms. Novak became extremely afraid of being outside. Shortly after May 7, 2024, Ms. Novak left her home in New York City. For approximately six weeks, Ms. Novak stayed with friends out of state because she was afraid to be in public in New York. New York City has been Ms. Novak's home for twenty-nine years.

97. Ms. Novak's mental health has deteriorated since the traumatic arrest.

98. Ms. Novak is unable to sleep properly and experiences long episodes of insomnia and nightmares that wake her up in the middle of the night.

99. Ms. Novak has been afraid to attend or take part in any actions in her capacity as a safety marshal since May 7, 2024.

100. Participating in these actions, especially as a safety marshal, is very important to Ms. Novak and the community who needs and values her expertise

101. Ms. Novak remains in fear of leaving her home and struggles to engage in the daily outside activities that once brought her joy.

102. Ms. Novak has also sustained physical injuries after the vehicle drove into her.

## **FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
False Arrest under the Fourth and Fourteenth Amendments
(Against the Individual Defendants)

103. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

104. The Individual Defendants, who were acting in concert and within the scope of their authority, arrested and caused Plaintiff to be imprisoned without probable cause, or failed to intervene in her false arrest, in violation of Plaintiff's rights to be free from unreasonable seizure under the Fourth Amendment to the Constitution of the United States and to be free from a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

105. The Individual Defendants intended to confine Plaintiff and, in fact, confined Plaintiff, and Plaintiff was conscious of the confinement.

106. The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

107. The Individual Defendants lacked probable cause to arrest Plaintiff.

108. No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

109. The conduct of the Individual Defendants was willful, wanton, and reckless.

110. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983
First Amendment Retaliation
(Against the Individual Defendants)

111. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

112. On May 7, 2024, the Individual Defendants arrested Plaintiff, or failed to intervene to stop Plaintiff's unlawful arrest, in retaliation for her engagement in expression protected under the First Amendment.

113. Plaintiff engaged in activity protected by the First Amendment, including but not limited to participating as a safety marshal during a peaceful protest as well as requesting information about Defendant Zuber's badge number and asking for information regarding a fellow safety marshal's arrest.

114. Plaintiff was not engaged in any illegal activity at the time she was arrested.

115. The Individual Defendants' actions in falsely arresting Plaintiff or failing to intercede in Plaintiff's wrongful arrest were motivated or substantially caused by Plaintiff's exercise of her First Amendment-protected rights, including her rights to ask for identifying information about public officials, and to serve as a safety marshal at a protest.

116. The Individual Defendants' actions have effectively chilled Ms. Novak's right to freedom of speech.

117. The actions of the Individual Defendants described herein, were designed to and did cause pain and suffering, emotional distress, and loss of liberty in direct retaliation for Plaintiff's exercise of her First Amendment rights.

118. As a direct and proximate result of the above Constitutionally impermissible conduct, Plaintiff sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
Common Law False Arrest/False Imprisonment
(Against All Defendants)

119. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

120. The acts and conduct of the Individual Defendants constitute false arrest and false imprisonment under the laws of the State of New York.

121. The Individual Defendants intended to confine Plaintiff and, in fact, confined Plaintiff, and Plaintiff was conscious of the confinement.

122. In addition, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

123. The Individual Defendants lacked probable cause to arrest Plaintiff.

124. No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

125. The Individual Defendants were at all times agents, servants, and employees acting within the scope of their employment by Defendant City of New York and the New York City Police Department, which are therefore responsible for their conduct under the doctrine of *respondeat superior*.

126. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## FOURTH CAUSE OF ACTION
Negligent Hiring, Retention, Training and Supervision
(Against Defendant City of New York)

127. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

128. Defendant City of New York and its employees, servants, and/or agents acting within the scope of their employment did negligently hire, retain, train, and supervise the Individual Defendants who were unfit for the performance of police duties on May 7, 2024, at the aforementioned location.

129. Plaintiff's injuries were reasonably foreseeable results of Defendant City of New York's breach of its duties.

130. Defendant City of New York is liable for its negligent hiring, retention, training, and supervision of the Individual Defendants.

131. As a direct and proximate result of Defendant City of New York's negligence, detailed above, Plaintiff sustained the damages alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against the Individual Defendants in an amount to be determined at trial;

C. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

D. Such other and further relief as this Court deems just and proper.

Dated: May 5, 2025
      New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP

                                        /s/
                                        Samuel Shapiro
                                        Sara Luz Estela

                                        One Rockefeller Plaza, 8th Floor
                                        New York, New York 10020
                                        (212) 763-5000

                                        CARDOZO CIVIL RIGHTS CLINIC

                                        Betsy Ginsberg
                                        Breana Beaudreault, *Legal Intern*
                                        Alejandra Suarez Garcia, *Legal Intern*
                                        Cardozo Civil Rights Clinic
                                        Benjamin N. Cardozo School of Law
                                        55 Fifth Avenue, 11th Floor
                                        New York, NY 10003
                                        (646) 592-6495

                                        *Attorneys for Plaintiff*